# IN THE DISTRICT COURT OF GUAM

RTI CONNECTIVITY PTE. LTD., a Singapore private limited company, and RUSSELL A. MATULICH,

    Plaintiffs,

v.

GATEWAY NETWORK CONNECTIONS, LLC, a Guam limited liability,

    Defendant.

CASE NO. 1:22-cv-00025

**MEMORANDUM DECISION DENYING PLAINTIFFS' MOTION FOR AN EXPEDITED ORDER TO FIND DEFENDANT IN CONTEMPT, AND A FURTHER ORDER TO SHOW CAUSE**

## I.    INTRODUCTION

On March 7, 2023, Plaintiffs RTI Connectivity PTE. Ltd. ("RTI-C") and Russel A. Matulich ("Matulich") (collectively "Plaintiffs") filed a motion for expedited order to hold Defendant Gateway Network Connections, LLC ("GNC") in contempt and a further order to show cause (Motion, ECF No. 44) along with supporting declarations and exhibits (ECF Nos. 45, 46, 47, 47-1, 47-2, 48, 48-1 – 48-8). The next day, GNC filed an interim response (Interim Opp'n, ECF No. 51), to which Plaintiffs filed a reply (Interim Reply, ECF No. 52). On March 10, 2023, the Court held a telephonic chambers conference with parties' counsel and set a briefing schedule and hearing date for the motion. (ECF No. 55.) GNC filed its full opposition (Opp'n, ECF No. 56) with various declarations and exhibits (ECF Nos. 56-1 – 56-4), and Plaintiffs filed their reply (Reply, ECF No. 57) with numerous declarations and exhibits (ECF Nos. 58, 58-1 – 58-5, 59, 59-1, 60). The matter came for a hearing on March 28, 2023, during which time the Court denied Plaintiffs' motion for an order to show cause. (Mins., ECF No. 62.) Additionally, the Court took under consideration whether to sua sponte initiate the procedure for imposition of sanctions pursuant to Rule 11(c)(3) against Plaintiffs' counsel for presenting frivolous arguments. (*See id.*) While Attorney Chase T. Tajima signed the motion and reply brief on behalf of Plaintiffs, he, as well as Attorneys Arthur

Clark and Minakshi Hemlani advanced the arguments at the hearing. The Court issues this Memorandum Decision detailing its rationale for denying the motion and declining to pursue sanctions. The Court's decision not to pursue sanctions does not diminish the undersigned's serious concerns and disappointment.

## II. PROCEDURAL HISTORY AND FACTS

The parties are engaged in extensive litigation in numerous fora, but relevant to the instant case is the Dispute Prevention & Resolution, Inc. ("DPR") arbitration in Hawaii (Arbitration No. 21-0272-A) involving RTI-C, Matulich, and GNC. The Arbitration Panel presiding over that arbitration issued an order on June 17, 2022 ("Arbitral TRO") holding that:

> GNC . . . [is] expressly ordered to provide and not interfere with the providing of 'customary access and service' to RTI-C, its officers, directors, agents, servants, employees, independent contractors, and attorneys (hereafter, collectively RTI-C) until the final ruling in this case.
>
> <u>The term customary access and service shall mean the level of access and service which RTI-C was receiving prior to December 31. 2020</u>, including, without limitation:
>
> l.   RTI-C shall have access to the Data Center during normal business hours from 9:00 am - 5:00 pm, Monday to Friday for all of the following: routine maintenance, installation, and de-installation of RTI-C's equipment . . .
>
> 2.   RTI-C shall continue to have a non-exclusive license to the RTI-C's Licensed Space (including any full cabinets, cages, suites, or rooms) licensed to RTI-C in the Data Center to install, operate, and maintain RTI-C's equipment including necessary AC or DC power.
>
> 3.   While RTI-C shall provide notice to GNC regarding the installation of RTI-C or its customers equipment and shall coordinate with GNC regarding delivery, timing and location of equipment, RTI-C shall be responsible for installing its own Equipment in the Licensed Space."

(Arbitral TRO 3, ECF No. 32-1 at 149.)

The United States District Court of Hawaii issued an order on July 28, 2022 granting RTI-C's and Matulich's motion for expedited order to confirm and enforce the Arbitral TRO. (Haw. District Court Order, ECF No. 32-1 at 7.) Ultimately, the Hawaii District Court held that the Arbitral TRO "must be confirmed[.]" (*Id.* at 32.)

On January 27, 2023, this Court held an order to show cause hearing in which it ordered GNC to provide Mendiola access on behalf of RTI-C. (Mins., ECF No. 40; Tr. 61, ECF No. 42.) Mendiola's access

to the GNC data center was not unfettered as this Court recognized that his access was limited by the Arbitral TRO – access was for the limited purpose of installing, operating, or maintaining RTI-C's equipment. (Tr. 62, ECF No. 42.) This Court's order enforced the Hawaii District Court's Order, which confirmed the Arbitral TRO. (*See id.* at 56.) Further, this Court recognized that enforcement would be temporary as the Arbitration Panel's final order was forthcoming; specifically, the undersigned stated that "[i]f during the interim from the filing of the motion, as well as the filing of the order to the time of the hearing there's been a change that would moot any of this, **then it's no longer for me to enjoin** or to find any, **like basis for contempt**." (*Id.* at 10 (emphasis added).)

On February 2, 2023, the Arbitration Panel issued its "Order on Claimants' Status Quo Motions[.]" (ECF No. 56-2 at 48.) The next day, the Arbitration Panel issued its "Findings of Fact, Conclusions of Law, and Final Award[.]" ("Final Award," ECF No. 56-2 at 6.) GNC, RTI-C, and Matulich filed motions to correct and/or clarify the Final Award. (Vukovic Decl. ¶¶ 11-12, ECF No. 56-2; Mots. Correct/Clarify, ECF No. 56-2 at 64, 93.) While the parties' motions to correct or clarify the Final Award were pending, Plaintiffs filed the instant motion. On March 14, 2023, the Arbitration Panel denied the motions to clarify. (Vukovic Decl. ¶ 15, ECF No. 56-2.)

### III. LEGAL STANDARD

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citation omitted). Contempt proceedings begin with the issuance of an order to show cause "why a contempt citation should not issue and a notice of a date for the hearing." *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 580 F. Supp. 2d 969, 971 (C.D. Cal. 2008) (citation omitted).

For the issuance of an order to show cause, a "plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move[s] the court to issue an order requiring the defendant to

show cause why he should not be held in contempt and sanctioned for his noncompliance." *Nuscience Corp. v. Henkel*, No. CV 08-2661 GAF (FFMx), 2014 U.S. Dist. LEXIS 44978, at *6 (C.D. Cal. Feb. 12, 2014) (quoting *In re Grand Jury Proceedings*, 142 F.3d 1416, 1424 (11th Cir. 1998)). The plaintiff should cite "the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned." *Id.* (quoting *In re Grand Jury Proceedings*, 142 F.3d at 1424). "If the court is satisfied that the . . . motion states a case of non-compliance, the court orders the [enjoined party] to show cause why he should not be held in contempt and schedules a hearing for that purpose." *AT&T Intellectual Prop. II v. Toll Free Yellow Pages Corp.*, No. CV 09-5707 PSG (PJWx), 2009 U.S. Dist. LEXIS 137670, at *4-5 (C.D. Cal. Dec. 14, 2009) (quoting *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000)).

In a civil contempt proceeding, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Alcalde*, 580 F. Supp. 2d at 971 (quoting *Federal Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004)). "If a defendant's action 'appears to be based on a good faith and reasonable interpretation of (the court's order),' he should not be held in contempt." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (citation omitted). "[A] civil contempt order must be accompanied by a 'purge' condition, meaning, it must give the contemnor an opportunity to comply with the order before payment of a fine or other sanction becomes due." *Dallas Buyers Club, LLC v. Doe–71.238.61.141*, No. 3:16-CV-00551-AC, 2016 WL 6208268, at *2 (D. Or. Oct. 21, 2016) (citation omitted).

### IV. DISCUSSION

#### A. Denial of Plaintiffs' Motion for an Order to Show Cause

RTI-C made four requests: 1) contempt sanctions for GNC's alleged violation of this Court's January 17, 2023 order for denying Mendiola access beginning February 27, 2023; 2) an order to show

cause why GNC should not be held in contempt for denying RTI-C authorized persons access and denying necessary power; 3) enforcement of the Hawaii District Court's Enforcement Order confirming the Arbitral TRO; and 4) attorney's fees. (Mot. 2.)

A preliminary but fundamental issue that must be addressed before considering the requested relief is whether the Arbitral TRO remained in effect after the Arbitration Panel issued its Final Award on February 2, 2023. This Court's January 2023 Order enforced the Hawaii Enforcement Order, which confirmed the Arbitral TRO; therefore, this Court's January 2023 Order and the Hawaii District Court's Enforcement Order are both premised upon the validity of the Arbitral TRO.

Turning to the language of the Arbitral TRO itself, the Arbitration Panel stated at least three times that the Arbitral TRO would expire once the final award was issued. First, pursuant to Rule 24 of the DPR Arbitration Rules, the Arbitration Panel issued the Arbitral TRO "to maintain the status quo **until the final award** of the arbitrators is rendered or the controversy is otherwise resolved." (ECF No. 32-1 at 148 (emphasis added).) Rule 24, titled "Provisional and Interim Remedies," grants the Arbitrators the authority to "order injunctive relief including interim awards to maintain the status quo . . . until the Award of the Arbitrator(s) is rendered[.]" (DPR Arbitration Rule 24; ECF No. 58-1 at 13.) The Arbitration Panel explicitly used the term "final award" within the Arbitral TRO, (ECF No. 32-1 at 148) and entitled its Final Award "Findings of Fact, Conclusions of Law, and Final Award[,]" which signaled that the Arbitral TRO expired upon the issuance of the Final Award. Second, the Arbitration Panel specified that the Arbitral TRO fully incorporated several of its past interim orders "except that the effectiveness of said Orders is extended **until the final ruling** in this case." (*Id.* (emphasis added).) Third, the Arbitral TRO provided that "GNC . . . [is] expressly ordered to provide and not interfere with the providing of 'customary access and service' to RTI-C, its officers, directors, agents, servants, employees, independent contractors, and attorneys (hereafter, collectively RTI-C) **until the final ruling in this case**." (*Id.* at 149 (emphasis added).) The Final Award that was issued on February 2, 2023 concluded by stating "[w]ith the issuance of this

Final Findings, Conclusions and Award, the jurisdiction of the Panel terminates except to the extent provided for by law." (ECF No. 56-2 at 46.) Therefore, the Final Award, which was the Panel's final ruling in this case, unequivocally terminating the Arbitral TRO per the very terms of the Arbitral TRO. As GNC noted, "Plaintiffs gloss over the impact of the [F]inal [A]ward[]" to fallaciously assert that the Arbitral TRO is still valid. (Interim Opp'n 4.)

Furthermore, the Arbitration Panel reiterated its intent for the Arbitral TRO to expire upon the issuance of the Final Award within the Final Award itself. The Final Award explained that the Arbitral TRO was entered "for the purpose of maintaining the status quo **pending the conclusion of this arbitration**[.]" (*Id*. at 17 (emphasis added).) Also, the Final Award stated that the Arbitral TRO "sought to insure [sic] that the customary access and services being provided to RTI-C on or before December 31, 2020, under the MSA/Order would continue to be provided **until the final award in this case**, subject to RTI-C's compliance with all terms of the MSA/Order which were not being arbitrated." (*Id*. at 59 (emphasis added).) The Arbitration Panel clearly intended for its Final Award to conclude the arbitration as it not only entitled the decision "Final Award," but it also noted the conclusion of its jurisdiction. (*See id*. at 46 (recognizing that "the jurisdiction of the Panel terminates except to the extend provided by law").)

Initially, in their motion, RTI-C and Matulich asserted that the Arbitral TRO was still in effect because the parties had filed motions to correct or clarify the Final Award. (Mot. 11.) Plaintiffs asserted that the Final Award is not the "final ruling," and cited to counsel's declaration and HRS § 658A-20. (*Id.* at 13; Tajima Decl. ¶ 4, ECF No. 47.) Counsel's declaration boldly asserts a conclusion of law - that the Final Award "is not the ultimate final ruling." (Tajima Decl. ¶ 4, ECF No. 47.) HRS § 658A-20 merely provides the arbitrators the authority to modify or correct an award; it is silent as to any effect the filing of a motion has on the award. At the hearing, Plaintiffs' counsel admitted that the Hawaii Uniform Arbitration Act, which they had relied upon for several of their arguments, does not have a provision specifying that the filing of a motion to correct or clarify stays a final award. Moreover, during the briefing of the instant

motion, the Arbitration Panel denied those motions. (Vukovic Decl. ¶ 15, ECF No. 56-2.) Therefore, RTI-C's and Matulich's argument that the Arbitral TRO is still in effect, assuming it had legal merits, was mooted.

Plaintiffs' counsel appeared to recognize this mooted issue, and rather than withdraw their motion, raised three new arguments that the Arbitral TRO was still in effect for the <u>first time</u> in their reply. The Court could have declined to consider these arguments solely on this basis. *See FT Travel - N.Y., LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases) ("Courts decline to consider arguments that are raised for the first time in reply."). Nevertheless, the Court analyzed these arguments as they further illustrated the lengths Plaintiffs' counsel were willing to stretch logic and reasoning to support their flawed contention that the Arbitral TRO had not expired.

First, RTI-C and Matulich contended that HRS § 658A-8(b)(2) gave this Court the authority to enter the remedies they seek. (Reply 8-9.) HRS § 658A-8(b)(2) provides that "[a]fter an arbitrator is appointed and is authorized and able to act . . . a party to an arbitration proceeding may move the court for a *provisional remedy* only if the matter is urgent and the arbitrator is not able to act timely or the arbitrator cannot provide an adequate remedy." (Emphasis added.) HRS § 658A-8 is entitled "Provisional remedies" and a provisional remedy is "[a] **temporary remedy awarded before judgment and pending the action's disposition**, such as a temporary restraining order, a preliminary injunction, a prejudgment receivership, or an attachment[, which] . . . is intended to maintain the status quo by protecting a person's safety or preserving property." *Remedy*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Here, the Arbitration Panel already issued its Final Award such that a provisional remedy is inappropriate. Moreover, even if a provisional remedy could still be awarded after the Final Award was issued, this Court is not the appropriate forum to seek such relief pursuant to HRS § 658A-8. Hawaii Uniform Arbitration Act defines court as "any district or circuit court of competent jurisdiction in this State [of Hawai'i], unless otherwise

indicated." HRS § 658A-1. Therefore, the District Court of Guam is not the proper forum to provide RTI-C and Matulich the interim relief they sought.

Second, RTI-C and Matulich asserted that the Arbitral TRO was still valid because the Arbitral Panel stated that the Arbitral TRO was issued "to maintain the status quo until the final award of the arbitrators is rendered or the ***controversy is otherwise resolved***." (Reply 9 (quoting ECF No. 32-1 at 148).) This is an extremely strained interpretation. The Arbitration Panel used the disjunctive term "or." It did not use the conjunctive "and." So if either of the conditions (issuance of the arbitrators' final award or the resolution of the controversy) occurred, the Arbitral TRO expired. The Final Award was issued; therefore, the Arbitral TRO expired according to the plain language of the Arbitral TRO. Moreover, the "controversy" denoted in the Arbitral TRO was the arbitration that the Arbitration Panel was presiding over. The Arbitration Panel was cognizant that its jurisdiction was "limited to the claims the Parties agreed to arbitrate" (ECF No. 56-2 at 11) and declined to address several issues outside of its jurisdiction (*id.* at 13, 15, 18, 25). The "controversy" of the arbitration was therefore resolved and disposed of by the Final Award, which terminated the Arbitral TRO.

RTI-C and Matulich referenced DPR Arbitration Rule 24 to substantiate their claim that "[w]hile the ultimate Final Award was rendered on March 15, 2023, two other milestones remain: When is the final ruling in this case? When is the controversy otherwise resolved?" (Reply 9.) Plaintiffs argued the Arbitral TRO is effective until finality in a civil action. (*Id.*) DPR Rule 24 states that

> [i]f the Arbitrator(s) appointment has been confirmed, the Arbitrator(s) may, upon sufficient cause shown by a party, order injunctive relief including interim awards to maintain the status quo or protect the property which is the subject of the arbitration *until the Award of Arbitrator(s) is rendered **or** the controversy is otherwise resolved to the same extent and under the same conditions **as if** the controversy were the subject of a civil action*.

(Rule 24, ECF No. 58-1 at 13 (emphasis added).) As discussed previously, Rule 24 allows for provisional and interim remedies. Further, an interim order is valid until either the Award of the Arbitrator is rendered, or the controversy is resolved in another fashion as if the controversy were the subject of a civil action.

RTI-C and Matulich ignored the "as if" modifier to the civil action clause: the arbitrator may issue preliminary injunctive relief that is valid until the arbitration is resolved, or, using the analogy of a civil case – when a civil case is resolved. Rule 24 does not state that injunctive relief is valid until the corresponding civil case is resolved; rather, Rule 24 allows injunctive relief that expires when one of two conditions is satisfied: either an arbitrator's award is rendered or the controversy is otherwise resolved. RTI-C's and Matulich's contention that the Arbitral TRO is still valid because the parties still have an ongoing controversy is plainly erroneous.

Third, RTI-C and Matulich also asserted a circular argument that "the Final Award which made final the Arbitral TRO" means the Arbitral TRO is still valid and has not expired, and "is no longer an 'interim award' but is now final, ripe for court enforcement." (Mot. 10-11.) This assertion is not supported by any law or fact. Plaintiffs' counsel cited to language from the Final Award that stated "[a]ll orders of the Panel, including without limitation the Panel's Order on the 'Status Quo Motions' are hereby expressly made final." (Reply 8 (quoting ECF No. 56-2 at 46).) In the Ninth Circuit, "an interim award may be deemed final for functus officio purposes if the award states it is final, and if the arbitrator intended the award to be final." *Bosack v. Soward*, 586 F.3d 1096, 1103 (9th Cir. 2009) (citing *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir.1999)). Years later, the Federal Circuit agreed with the Ninth and Eighth Circuits "that an arbitrator's intent, as expressed in the language of the arbitral award" instructs "whether an interim award is a final decision," and further expounded that "[w]hen an arbitrator makes clear that an interim award reflects only a preliminary assessment of the evidence and retains jurisdiction to render a final award based on additional evidence, there is little concern that new findings in a subsequent award would defeat the parties' reasonable expectations about their rights and liabilities." *Ramirez v. DHS*, 975 F.3d 1342, 1348 (Fed. Cir. 2020). Here, as explained above, the language of the Arbitral TRO clearly limited its applicability until the Final Award was issued. Additionally, the Final Award clarified and reiterated the expiration of the Arbitral TRO as outlined above. Therefore, the Arbitration Panel's intent,

as reflected by the language of the Arbitral TRO and the Final Award, was for the Arbitral TRO to expire upon the issuance of the Final Award.

Moreover, to the extent that RTI-C and Matulich asserts that the Final Award made the Arbitral TRO final, it appears that they seek to have this Court enforce the Final Award. However, the Final Award has not been confirmed as Plaintiffs just filed a motion to confirm the Final Award before a Circuit Court in the State of Hawaii. (*See* ECF No. 61-1.) So assuming that RTI-C and Matulich are seeking to enforce the Final Award, which they claim incorporates the Arbitral TRO (contrary to logic and the language of the Arbitral TRO and Final Award), they must first have the Final Award confirmed pursuant to HRS § 658A-22. *See Mikelson v. United Servs. Auto. Ass'n*, 227 P.3d 559, 561 (Ct. App. 2010) ("Confirmation of an arbitration award is an 'expeditious procedure for reducing or converting the arbitration award to a judgment which can be enforced by judicial writ.'"); *see also Ministry of Def. & Support v. Cubic Def. Sys.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011) ("Once the award is confirmed, the judgment has the same force and effect of a judgment in a civil action and may be enforced by the means available to enforce any other judgment."). As the Panel recognized in their Order on Claimants' Status Quo Motions entered one day before the Final Award, "arbitrators do not enforce … their final awards as that function belongs to the courts[.]" (ECF No. 56-2 at 56.) Therefore, to the extent that Plaintiffs are seeking to enforce the Arbitral TRO through the Final Award, RTI-C and Matulich are prevented from doing so since the Final Award has not been confirmed.

At the hearing, Plaintiffs further argued that the Final Award impliedly incorporated the Arbitral TRO provision on customary access issue. This argument is not well taken given the clear limitation of the Arbitration Panel's jurisdiction to adjudicate agreed upon claims; the issue of customary access was not one of them. As the Arbitration Panel stated in their Order on Claimants' Status Quo Motions, issued the day before the Final Award,

> "It is clear Claimants' view of customary access and services means either access in accordance with any directives of Matulich and/or industry standards of access and service

to data centers in general. Such a view is both self-serving and inconsistent with the TRO which sought to insure [sic] that the customary access and services being provided to RTI-C on or before December 31, 2020, ***under the MSA/Order*** would continue to be provided *until the final award in this case*, subject to the RTI-C's compliance with all terms of the MSA/Order which were not being arbitrated.

(ECF No. 56-2 at 59 (second emphasis added).)

In sum, the Arbitration Panel intended for the Arbitral TRO to expire upon the issuance of their Final Award, as reflected in the plain language of the Arbitral TRO and the Final Award. RTI-C's and Matulich's arguments, which were raised for the first time in their reply, to the contrary are unavailing. Because the Arbitral TRO expired, the Hawaii District Court's order and this Court's Order have also expired.

### B. Reprimand of Plaintiffs' Counsel

When an attorney signs and presents a filing to the court, they:

> certify[y] to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Local Rule 22.3 dictates that attorneys practicing before this Court are subject to the ABA Rules of Professional Conduct and Code of Professional Responsibility. GNLR 22.3(b). Model Rule of Professional Conduct 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

As detailed above, the arguments Plaintiffs raised were entirely baseless and needlessly wasted judicial resources. As an example of their incredulous arguments, Plaintiffs' counsel twisted the Arbitration Panel's use of the word "or" to somehow become a conjunction. This contortion violates basic principles of statutory construction. The reply is further riddled with instances in which counsel flagrantly disregarded the Arbitration Panel's plain words in both the Arbitral TRO and the Final Award to present illogical arguments. And despite the Final Award's issuance, Plaintiffs' counsel filed this motion seeking enforcement of the Arbitral TRO and sought resolution on an expedited basis – it was filed on Tuesday evening and requested the Court's intervention by that Thursday.

Plaintiffs' counsel had numerous opportunities to withdraw their motion and cease advancing such frivolous arguments– after GNC's counsel filed their interim opposition; when Plaintiffs' counsel filed their interim reply; when the Court held a status conference on March 10, 2023; after GNC's counsel filed their full Opposition, which noted the mootness of Plaintiffs' attorneys' first argument; when Plaintiffs' counsel filed their Reply; and when the Court held the hearing.

While the Court is disappointed with Plaintiffs' counsel and considered initiating the process for Rule 11(c)(3) sanctions, it recognizes the seriousness of such sanctions and elects not to pursue those as this memorandum decision memorializes their conduct and should serve as sufficient deterrence. Furthermore, the Court recognizes that GNC's attorneys did not find Plaintiffs' counsel's conduct egregious enough to ask for sanctions.

### V. CONCLUSION

Based on the foregoing, the Court DENIED Plaintiffs' motion for expedited order to hold GNC in contempt and a further order to show cause. The Arbitral TRO, which Plaintiffs relied upon for their motion, expired upon the Arbitration Panel's issuance of the Final Award; thus, the Arbitral TRO can no longer be enforced. Plaintiffs' various and changing arguments that the TRO is still valid is self-serving and inconsistent with the plain language of the Hawaii Uniform Arbitration Act, the DPR Arbitration Rules, the Arbitral TRO, the Order on Claimants' Status Quo Motions, and the Final Award. Additionally, while the Court considered sanctioning Plaintiffs' counsel for bringing these frivolous arguments unsupported by facts or the law, the undersigned has decided to forgo such in hopes that this Memorandum Decision impresses upon counsel the gravity of the Court's concerns.

IT IS SO ORDERED this 30th day of March, 2023.

_____
RAMONA V. MANGLONA
Designated Judge